[Civ. No. 19383.   Second Dist., Div. One.   Mar. 16, 1953.]

JOHN GROSS, Appellant, v. MAYTEX KNITTING MILLS, INC., et al., Respondents.

Nathan L. Schoichet for Appellant.

Harold Rubins for Respondents.

DRAPEAU, J.—This is an appeal by plaintiff from a judgment in favor of defendants based on a verdict of the jury in an action for damages for breach of a contract of employment.

The record on appeal includes an engrossed settled statement summarizing the oral testimony in lieu of a reporter's transcript.

The record discloses that Maytex Knitting Mills had been engaged in the manufacture of underwear in Los Angeles for two years, when it decided to close out that line and start manufacturing ladies' T-shirts and blouses. As a result, in the latter part of February, 1950, the company was not in production and had no sales force. Respondent Mayo, president of the company, was looking for a sales manager and appellant was recommended to him for the position. The two men met and respondent Mayo told appellant that Maytex needed national distribution of its product in order to stay in business, and that this should be accomplished quickly.

On March 12, 1950, the parties executed an agreement employing appellant as sales manager. He was to receive $100 per week for three months and $200 thereafter. The agreement ran from April 1, 1950, to December 31, 1951, with an option in appellant to renew for another two years if the gross sales reached $250,000 in the period from July 1, 1950, to June 30, 1951.

By the end of May, 1950, the old company's inventory had been disposed of and orders for the new line of blouses were received early in April. In the meanwhile, nothing had been done by appellant toward setting up a national sales organization.

In July, respondent Mayo became dissatisfied with appellant's performance and asked for a new agreement in which appellant's earnings would be based on the amount of sales, thus giving him greater incentive to produce. Appellant was reluctant to give up his salary of $200 per week, but agreed in order to "keep peace in the family," and because he could make more money on a commission basis.

The new agreement was for a two-year term, and when it was executed on July 17, 1950, both parties were represented by their attorneys.

By its terms, appellant was employed as sales manager in charge of all sales. He in turn agreed to assume his duties as such and "to devote his best efforts and energies in organizing and directing the sales activities of Maytex, including the setting up and direction of a national sales organization," with full authority to direct and supervise, "hire and fire" all sales personnel.

In addition he was given exclusive selling rights of all Maytex products in the California territory, and was required "to devote his best efforts and energies consistent with his other duties hereunder in selling Maytex products in the California territory."

For these services Maytex agreed to pay appellant a commission equal to 7 per cent of sales in the California territory, plus one-half of 1 per cent on all sales made by Maytex. Against this appellant was allowed a weekly salary and a drawing account. Maytex agreed to pay all of his local, traveling and entertainment expenses and to render monthly accountings, payment of compensation to be made simultaneously.

The contract contained an option in respondents to terminate it upon 30 days' notice in the event commissionable sales were less than $100,000 in the ensuing six months, or were less than $200,000 for the year ending July 16, 1951.

On July 27, 1950, the agreement was modified with respect to traveling expenses, and in August appellant agreed to a reduction in his commissions on sales to certain stores.

On September 11, 1950, appellant was discharged. This was confirmed by letter of September 13, 1950, signed by respondent Mayo, giving as reasons for the discharge appellant's failure and refusal to carry out the terms of the agreement, and to obey the reasonable instructions of said respondent. The last paragraph reads: "You are hereby directed to cease acting on behalf of Maytex at once, and to return all sample garments retained by you. Any commissions due you from Maytex will be paid promptly when the amount of said commissions is determined by our auditor."

In response to this, appellant's counsel directed a letter to Maytex on September 20, 1950, which contained, among other things, the following: "May I also point out that there are now commissions due under the contract which have not

been paid, and demand is herewith made upon you to pay these commissions forthwith." This letter was admitted in evidence by stipulation. Thereafter, on motion of respondents, the trial court set aside the stipulation and withdrew the document from evidence. Appellant reoffered it but respondents' objection that it was incompetent, irrelevant, immaterial and hearsay was sustained. Respondents' objection to appellant's offer of proof on the same general grounds was also sustained and the offer was rejected.

There was evidence to the effect that appellant did some selling but made no effort to set up a national sales force. When urged to do so, said he was a salesman and interested only in sales made in California for which he received a higher commission than for other sales. He stated that if Mayo wanted a national organization he should set it up himself. In this connection, appellant produced a letter of inquiry from a prospective salesman in Seattle which he said he discussed with Mayo, but that the latter refused to do anything about it. Respondent denied he. ever saw or discussed this letter with appellant.

Appellant testified that on September 11, 1950, he received a complaint that someone had sold the same garment to two stores in Los Angeles and that it was being featured in the windows of one store to the displeasure of the other. He said he told Mayo: "Jack, you just can't do that." They then got into a heated argument during the course of which Mayo told him he was fired. On cross-examination, appellant admitted that the two stores in question were his accounts and if anyone sold the same garment to both, he must have done so. In his deposition, appellant stated he did not remember any of the conversation culminating in his discharge. On cross-examination he testified that about 10 days before trial he discussed the case with his attorney, who told him he would have to remember that conversation. He then "racked his brain" and remembered it.

Respondent Mayo's version of the same incident was as follows: He said he upbraided appellant for refusing to call on certain accounts and for failure to get the national organization set up. Appellant replied that under the contract he was not a sales manager, but a "free agent," and that he was only interested in his 7 per cent commissions on California sales. Further that he was not working for Mayo but for the corporation, and would not take Mayo's orders unless they suited him and were to his advantage; that if Mayo did

not stop annoying him about national sales, he would punch him in the nose. Mayo then told appellant if he did not follow his orders he was fired. Appellant replied that he "would sue Mayo for everything he had and stormed out of the office." This testimony was corroborated by the witnesses Stanley and Dassin, employees of Mayo.

All through the trial, the evidence on the various issues was sharply conflicting. At the conclusion, special interrogatories were answered by the jury as follows:

"1. Did the plaintiff discharge his duties as salesman and salesmanager during the period July 17, 1950, to September 11, 1950, under his contract? *No.*

"2. Did defendants unreasonably and without sufficient justification, discharge plaintiff from his employment on September 11, 1950? *No.*"

It is here urged that the trial court "committed prejudicial and reversible error of law by its rulings and orders on the admission and exclusion of certain evidence on motions made to conform to proof and in connection with the instructions given to the jury and instructions refused and rejected."

Appellant first urges error by the trial court in excluding evidence relating to commissions actually earned by him prior to his discharge.

He particularly directs attention to the letter of September 20 (Exhibit 4) hereinbefore mentioned. Also to four letters exchanged between counsel after the start of this action concerning a check for $356.78, dated December 19, 1950, purporting to be in payment of commissions due appellant from September 1, to September 11, 1950. (Exhibit 27 for identification.)

This evidence was offered on the theory that appellant was entitled to commissions on California sales for the two-month period even though it was assumed that he had not performed those terms of the agreement respecting a national sales force.

The trial court sustained respondents' objection to its introduction on the grounds (1) that this issue was not raised by the pleadings; and (2) that the contract was "entire" in the sense that appellant must have substantially performed all duties required of him before he became entitled to compensation.

The complaint alleges the agreement, performance of all covenants by appellant from July 17, to September 11, 1950, when he was "wrongfully and unlawfully discharged," and

thereafter prevented by respondents from further performance, although he offered in good faith to resume and to continue to perform his duties under the contract. And it is further alleged that appellant is entitled to commissions on sales made for the entire period covered by the contract, to wit: July 17, 1950, to July 16, 1952; that an accounting is necessary to ascertain such commissions; that appellant has estimated the over-all volume of sales for that period to be in excess of $600,000; and that by reason of respondents' breach of contract, appellant has been damaged in the loss of commissions for the said period of the contract in the sum of $38,000.

The complaint prays for an accounting of all Maytex sales made during the period of the written employment contract and for a judgment for $38,000, "less any sums actually paid on account of commissions, as and for commissions due to plaintiff under the terms of the employment agreement."

From the foregoing it is clear that the complaint sufficiently alleges that appellant is entitled to commissions on sales made in the period prior to discharge. In addition to his duties as a sales manager, appellant had exclusive selling rights of all Maytex products in California. And it is conceded that he made some sales between July 17 and September 11, 1950. Moreover, the letter of discharge offers payment of "any commissions due you" when determined by the company's auditors.

The contract provides "Commissions based on sales as herein provided shall be payable to Gross, irrespective of the date of payment to Maytex or other selling commissions thereof which may be incurred by Maytex.

"Commissions earned by Gross shall be accounted for at the end of each month on the 10th day following the end of each month and payment made simultaneously with the accounting which is rendered. In making such payments Maytex shall deduct therefrom the salaries paid out to Gross and the advances made to Gross under the terms hereof."

Appellant "testified that at the time of his discharge he had received on account of commissions the sum of $1,000 less Social Security and withholdings, and that he received no other or further compensation from defendants."

Assuming that the discharge was justified under the evidence because of failure to set up a national sales force, as contemplated by the contract, that provision is divisible from those respecting commissions payable on sales.

■ As stated in 6 California Jurisprudence 322, section 191: ". . . a severable contract has been defined to be one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor intended by the parties that they shall be."

■ It follows that it was prejudicial error for the trial court to exclude from consideration by the jury the evidence tending to prove the issue of earned commissions.

In the circumstances it was likewise error to give the jury instruction No. 30, to wit:

"You are instructed that in this action plaintiff does not claim that there are any commissions due him for orders received by him before his discharge. If in fact plaintiff does have a claim for commissions due him for orders received by him before his discharge, you are not to consider such claim in connection with determining plaintiff's right in this action as such a claim, if any, is not involved here."

In view of the conclusions reached herein, appellant's requested instruction No. 5A respecting commissions earned before discharge might well have been given, with some modifications.

■ Appellant claims error in admitting in evidence over his objection a Western Union telegram dated August 14, 1950, directed to Westwood Knitting Mills, Los Angeles, to wit:

"Mr. Dassin contact me immediately with your Maytex Knitting Mills line of Jersey blouses  Opening new store first of October  Regards  Lowry Dept. Stores."

Mr. Dassin had known appellant when they were both employed by Westwood Knitting Mills. He testified that before he agreed to handle the Maytex line he talked to appellant who told him it was not necessary to consult with Westwood because the two lines were not competing. Respondent Mayo testified that appellant refused to call on certain stores and consented to have Dassin do so.  Later Dassin received an order for Maytex and when appellant saw it on August 14th, he became very angry and left the plant. Respondent further stated that Dassin showed him the telegram in question and told him that Westwood had discharged him.  Mayo also testified that when he discharged appellant he did not know that

he had sent the telegram and that it was not an element of appellant's discharge.

Appellant denied any knowledge of the telegram but when shown a copy of it on cross-examination, he admitted that he wrote it in anger and then decided not to send it; that he left it on a table in his apartment where his wife found it and sent it. Mrs. Gross was not presented as a witness at the trial.

Appellant's objection to the admission of the telegram in evidence on the ground it was irrelevant and outside the issues of the case, was overruled.

This was proper. Having admitted that he wrote the telegram, it is not seemly for appellant to claim that its admission was prejudicial.

For the reasons stated, the judgment is reversed. The cause is remanded for a new trial on the single issue of the amount of accrued or earned commissions on sales, if any, made in the period prior to plaintiff's discharge, and with directions to enter judgment accordingly.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied April 6, 1953, and respondents' petition for a hearing by the Supreme Court was denied June 4, 1953.